*73 OPINION.
Kern:
The first issue for our consideration is whether respondent rightly disallowed loss deductions in the amounts of $2,447.50 on the individual 1936 income tax returns of L. J. Miller and of L. G. Monroe, now deceased. Petitioners now concede that 40 percent of those amounts is not a proper deduction in any event, inasmuch as there is no showing when the bonds were acquired and from the record it appears that they could not have been held more than five years prior to the transfer to Monroe <⅞ Miller, Ltd. Petitioners’ theory underlying the deductions appears to be that petitioners realized a total loss upon the sale of 44½ bonds in 1936 and are entitled to a deduction of 60 percent thereof.
Miller, one of the petitioners herein, testified that he and Monroe considered the Peninsula Properties stock worthless at the time they turned over the bonds to Monroe & Miller, Ltd., but wanted the stock because of the control it evidenced. However, Miller and Monroe as individuals airead;/ controlled Monroe & Miller, Ltd., and that corporation controlled Penproco. We therefore regard this testimony as to motive incredible. We consider petitioners’ theory, therefore, to be that they transferred to Monroe & Miller, Ltd., certain valuable bonds in return for stock known by them to be *74 worthless. Even on petitioners’ theory it appears that petitioners could not have realized a deductible loss, inasmuch as, in transferring the bonds to Monroe & Miller, Ltd., in exchange for the Peninsula Properties stock, petitioners could not be considered as entering into a transaction with a profit intent or motive. Petitioners both knew, according to this testimony, that they were giving up something of value and were going to receive something devoid of value. Such a transaction, if we accept the hypothesis that the stock was worthless, must be considered as an additional contribution by petitioners to the capital of Monroe & Miller, Ltd., and not a sale or exchange upon which a deductible loss is recognizable.
If, on the other hand, the stock could be said to have had value at the time of the transaction, petitioners have failed to show that the value was less than the value of the 44½ bonds turned over to Monroe & Miller. Ltd., and, assuming that the stock was not worthless in 1936, we would be forced to uphold the Commissioner’s determination for lack of proof on petitioners’ behalf.
The testimony presented in this proceeding is not satisfactory with regard to the question of insolvency of the Peninsula Properties Co. and the consequent worth or worthlessness of its stock. Miller testified that at the close of the fiscal year 1936 the corporation’s assets were worth $976,994.78, in contrast to liabilities of $1,313,444.78; and that at the close of the fiscal year 1937 the assets had dropped to $884,668.48 and the liabilities to $1,179,965.52. But this calculation was admittedly based upon the 1927 cost of the assets held. While Miller testified that, in his opinion, the original cost prices actually exceeded the 1936 and 1937 fair market values of the assets, this testimony is refuted by evidence in the record showing huge profits in 1937 realized by Aptos on sales of properties transferred by Peninsula Properties to Aptos. No evidence was ever presented to show what comprised the assets of Peninsula Properties Co. at the close of the two fiscal years. There is testimony of a sale of all the Bio Del Mar property by Peninsula Properties Co. to Aptos in 1935, but it appears that this was no more than a book transaction. Aptos did not pay anything to Peninsula Properties Co. at the time of the alleged sale and Aptos received no land titles at that time, since they were all held in escrow. The only exhibit dealing with the alleged sale was a letter to the escrow agent informing it that such a sale had taken place. It would seem more practical to say that no sales actually took place until Aptos paid for the lands alleged to be the subject of the sales. This Aptos did only when Aptos had engineered a sale to the public of the properties involved. Therefore, if the assets of the Peninsula Properties Co. at the close of the fiscal years 1936 and 1937 be considered to include all lands not paid for by Aptos, there would be good reason to conclude that *75 Peninsula Properties was solvent, since the fair market value of these lands, as shown by actual sales, was on the average at least 90 percent greater than the 1927 cost, and therefore its stock would have value.
On this issue we decide in favor of respondent.
The second issue deals with the same bond transaction, but has to do with the issue raised in respondent’s amended answer to the effect that the transfer of the 44½ bonds in 1936 and the 11½ bonds in 1937 resulted in taxable income to petitioners in 1937 in the full face value of the bonds plus all accrued interest. Respondent’s contention appears to be that Aptos received a benefit in this amount and that, since petitioners own all Aptos’ stock, they may not avail themselves of a roundabout reflection of income to escape taxation thereon. We fail to see how Aptos received any income, however. It is true that cancellation of the bonds by the Peninsula Properties Co. released certain properties from the trust lien; but Aptos still had to pay the Peninsula Properties Co. the agreed price for the property. If the lien had not already been lifted from the property purchased by Aptos, it would be lifted as the result of Aptos’ payment of the purchase price, which Avas generally done by Aptos turning bonds in to Peninsula Properties Co. However, if the property was already freed from the lien, Aptos Avas still obligated to pay the price for it called for by its contract with Penproco, even if by a medium other than Penproco’s bonds. We fail to see how the petitioners diverted income to any of the corporations in which they had an interest.
The final issue for our consideration relates to certain deductions for traveling expenditures. Both Miller and Monroe listed on their 1936 income tax returns the following deductions: automobile expense, $2,400; entertainment expense. $1,800; traveling expense, $3,120. Respondent allowed only $1,200 of this last item, and disallowed the balance of $1,920 in each case, due to lack of evidence to support the deduction thereof. In his 1937 return Miller again deducted $3,120 for traveling expenses. Respondent again disallowed $1,920 of this amount. In his 1937 return Monroe deducted $2,100 for traveling expenses. Respondent disallowed $900 of this amount.
At the hearing no evidence whatsoever was offered to substantiate these deductions on behalf of Monroe and we, accordingly, sustain respondent’s determination as applied to Monroe.
Miller admitted that he had insufficient records and memoranda to substantiate the deductions claimed by him. He testified that he was generally away from home on business about three days a week and had to stay at hotels in San Francisco or Los Angeles. Often, when in San Francisco, hoAvever, he stayed at the home of his mother as a guest. Miller claimed that, being in the real estate business, he was obliged to spend money for the entertainment of customers and *76 that such expenditures are included within the $3,120 deducted by him as traveling expenses. He further testified that, although he had no records to prove the deductions, he knew of his own knowledge that he had actually deducted less than he had spent. This assertion, in terms of generalities, without any corroboration other than a few isolated checks, amounts to little more than a reassertion of the allegation of error in Miller’s petition. The amount claimed by Miller amounts to an average weekly expenditure of $60. Respondent has allowed expenses which would average approximately $23 a week. Considering all the evidence on this issue in the light of general experience, and making allowance for amounts representing fair and reasonable expenses in the circumstances of Miller’s business, Rugel v. Commissioner, 127 Fed. (2d) 393; and bearing in mind that the necessity for approximation may properly bear heavily against the taxpayer whose inexactitude is of his own making, Cohan v. Commissioner, 39 Fed. (2d) 540, we conclude that petitioners have not sustained their burden of proving error in respondent’s determination and therefore we decide the issues concerning traveling expenses for 1936 and 1937 in favor of respondent.

Decision will he entered under Rule 50.